IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. DIPALMA, | ) | CASE NO. 1:14-CV-00756 |
| | ) | |
| Plaintiff, | ) | JUDGE LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Michael J. Dipalma ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On August 12, 2010, Plaintiff filed an application for SSI, alleging a disability onset date of October 17, 2009.  (Transcript ("Tr.") 14.)  Plaintiff's claim was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On February 9, 2012, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") and a medical expert ("ME") also participated and testified.  (*Id.*)  On March

29, 2012, the ALJ found Plaintiff not disabled. (Tr. 11.) On February 3, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On April 7, 2014, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 13, 19.)

Plaintiff asserts the following assignments of error: (1) The ALJ failed to adequately support his findings; and (2) the ALJ erred in relying on VE testimony.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in June 1967 and was 43-years-old on the date he filed his application. (Tr. 19.) He had a limited education and was able to communicate in English. (*Id.*) He had past relevant work as a printed circuit board and a quality control inspector. (*Id.*)

### B. Medical Evidence

#### 1. Medical Reports

##### a. Physical Limitations

Plaintiff was involved in a motor vehicle accident in 1997, which has caused chronic neck pain, lower back pain, right knee problems, and left shoulder pain. (Tr. 311.) He had some relief with prescription medications, but had difficulty lifting, standing, walking, and sleeping. (*Id.*)

An MRI performed in January 2008 revealed mild diffuse disc bulge at L1-2, greater on the left, and no significant canal stenosis or neural foramina narrowing. (Tr. 306-307.)

In February 2008, Plaintiff complained to treating physician Teresa Ruch, M.D., of radiating pain into his left arm. (Tr. 311.) In March 2008, a nerve conduction study confirmed left-sided chronic radiculopathy. (Tr. 312, 633-634.)

In a medical source statement completed in March 2008, treating physician Randall Schwartz, M.D., opined that Plaintiff could sit, stand, and walk, one hour each in an eight-hour workday. (Tr. 309.) Dr. Schwartz further opined that Plaintiff could and carry a maximum of five pounds, and that Plaintiff was markedly limited in bending and moderately limited in pushing/pulling, reaching, and performing repetitive foot movements. (*Id.*) Dr. Schwartz indicated that his opinion was based on Plaintiff's cervical radiculopathy and pain. (*Id.*) He concluded that Plaintiff was unemployable. (*Id.*)

Plaintiff complained to Dr. Schwartz of radiating neck pain in January 2011. (Tr. 388.) An MRI performed on February 4, 2011, revealed degenerative changes at two levels of the cervical spine. (Tr. 432-433.)

On July 19, 2011, Plaintiff sought treatment at an urgent care facility following a motor vehicle accident. (Tr. 637.) Plaintiff was diagnosed with neck strain and atypical chest pain. (Tr. 639.) During a visit with Dr. Schwartz later that month, Plaintiff complained of neck pain. (Tr. 498.) Dr. Schwartz observed normal neurological examination findings, including full cervical range of motion in all planes with pain. (*Id.*)

Plaintiff participated in physical therapy for neck and left arm pain during the period of August 2011 to October 2011. (Tr. 555-614.) Plaintiff reported to his physical therapist that two to three times per year he experienced exacerbations of neck pain that radiated into his left arm. (Tr. 515.) Plaintiff was discharged from physical therapy on October 19, 2011, with a subjective pain rating of "4" on a 10-point scale. (Tr. 555-557.) Plaintiff's

3

physical therapist offered a "good" prognosis, noting that no further skilled care was necessary. (Tr. 556-557.)

During an office visit in October 2011, Dr. Schwartz noted normal neurological findings. (Tr. 496-497.) Plaintiff reported experiencing a "flare" of neck pain and stiffness the previous month. (Tr. 496.) He also reported radiating neck pain to his left arm, but noted that the numbness in his left fingers was improving. (*Id.*)

### b. Mental Limitations

Plaintiff sought mental health treatment throughout the relevant period. He was diagnosed with post traumatic stress disorder (PTSD) and depressive disorder. (Tr. 327.) A progress note from February 9, 2010, indicates that Plaintiff had a history of frustration, anxiety, irritability, and poor sleep, despite being compliant with his medications. (Tr. 347-348.) A treatment note from April 13, 2010, indicated that Plaintiff continued to experience anger, frustration, and hopelessness. (Tr. 460.) Anger management was suggested in a treatment note from June 2010. (Tr. 455.)

Plaintiff saw a counselor regularly throughout 2011 and underwent a psychological evaluation on December 14, 2011. (Tr. 616.) Plaintiff's mood was anxious and irritable and his attention and concentration were impaired. (Tr. 618.) Plaintiff was diagnosed with PTSD; major depression, recurrent; and alcohol abuse. (*Id.*)

On January 26, 2012, Adam D. Borland, Psy.D., reported that Plaintiff had been receiving continuous comprehensive mental health treatment since 2009. (Tr. 636.) Dr. Borland opined that Plaintiff's "prognosis appears poor given his difficulty effectively coping with anxiety, stress, and feelings of hopelessness resulting from the effects of a severe learning disorder, as well as physical trauma sustained from two automobile accidents."

(*Id.*)

### 2. Agency Reports

In December 2010, state agency reviewing physician Dimitri Teague, M.D., opined that Plaintiff could: lift 50 pounds occasionally and 10 pounds frequently; stand, walk, and sit for about six hours in an eight-hour workday; perform limited pushing and/or pulling with the upper extremities; perform limited overhead reaching with the non-dominant arm; and occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 104-105.) State agency reviewing physician Gerald Klyop, M.D., affirmed Dr. Teague's opinion. (Tr. 120-121.)

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

Plaintiff testified that he stopped working because he "couldn't handle the work anymore, physically and maybe even mentally." (Tr. 37.) He stated that he experienced constant neck and back pain, as well as occasional flares of arm pain and finger numbness. (Tr. 44.) He testified that following a motor vehicle accident in July 2011, he experienced neck pain that radiated to both arms. (Tr. 50.) He said that his physical condition sometimes affected his ability to perform household chores and personal care tasks. (Tr. 39-42.) Plaintiff also had dyslexia, which affected his ability to read. (Tr. 32-33.) In addition, he suffered from depression, PTSD, and panic attacks. (Tr. 34, 46.)

#### 2. Vocational Expert's Hearing Testimony

Nancy Borgeson, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience who would be able to perform a medium level of work, except that he should: avoid overhead reaching with his non-dominant left arm; avoid climbing ladders, ropes, or

scaffolds; and perform only occasional stooping, crouching, crawling, kneeling, and balancing. (Tr. 66-67.) The individual would be capable of simple, routine tasks that could be performed independently and that involve working primarily with things rather than people. (Tr. 67.) The individual would be limited to superficial interactions with coworkers and supervisors and work that would involve no direct interactions with the general public. (*Id.*) He should avoid work requiring strict production quotas or rigorous production pace, and would preferably have oral instructions with no tasks requiring reading except for simple words or occasional short and simple notes. (*Id.*) The VE testified that the hypothetical individual would be capable of performing such jobs as a laundry worker (Dictionary of Occupational Titles (DOT) #361.685-018), a stock handler (DOT #922.687-058), and an industrial cleaner (DOT #381.687-018). (Tr. 73.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he

6

is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since August 12, 2010, the application date.

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, depression, post traumatic stress disorder, and dyslexia.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined

7

          in 20 CFR 416.967(c) except with the nonexertional limitations that he avoid overhead reaching with his non-dominant left arm; that he avoid climbing ladders, ropes, and scaffolds; that he perform occasional stooping, crouching, crawling, kneeling, and balancing; that he perform simple, routine tasks that can be performed independently and that involve working primarily with things rather than people; that he have superficial interactions with coworkers and supervisors; that he have no direct interaction with the general public; that he avoid strict production quotas or rigorous production pace; and that he preferably have oral instructions with no tasks requiring reading except for simple words or occasional short and simple notes.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born in June 1967, and was 43-years-old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 12, 2010, the date the application was filed.

(Tr. 16-20.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc.*

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Failed to Adequately Support His Findings.

Plaintiff had previously filed for SSI in December 2006. (Tr. 18.) That application was denied initially and upon reconsideration; and he had a hearing before ALJ Stephen Hanekamp ("ALJ Hanekamp") on September 8, 2009. (*Id.*) ALJ Hanekamp denied Plaintiff's claim, finding that Plaintiff had the residual functional capacity (RFC) to perform medium work with the following nonexertional limitations: he must avoid overhead reaching with the non-dominant left arm; he must avoid climbing ladders, ropes, and scaffolds; he could perform only occasional stooping, crouching, crawling, kneeling, and balancing; he could complete simple, routine tasks that could be performed independently and that

involve working primarily with things rather than people; he must be limited to superficial interactions with coworkers and supervisors; he could have no direct interaction with the general public; he must avoid strict production quotas or rigorous production pace; and he should preferably have oral instructions with no tasks requiring reading except for simple words or occasional short and simple notes.  (Tr. 92-93.)

In the instant application, ALJ Thomas M. Randazzo ("ALJ Randazzo") adopted the 2009 RFC determination of ALJ Hanekamp, explaining: "In the Sixth Circuit, I am obligated to adopt the opinions of a previous ALJ, absent any proof of change in the claimant's condition (AR 98-4(6)).  I find there has been no change in the claimant's condition, and as indicated, I adopt the residual functional capacity formulated by Judge Hanekamp."  (Tr. 18.)  Plaintiff argues that ALJ Randazzo conducted an inadequate analysis of the evidence when concluding that Plaintiff's condition had not changed since his previous application for SSI.  For the following reasons, Plaintiff's argument is without merit.

Absent substantial evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.  *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842-43 (6th Cir. 1997).  In order to avoid the application of *Drummond,* a claimant must present evidence showing that his symptoms have changed since the time of the Commissioner's prior determination.  *Bender v. Comm'r of Soc. Sec.*, 2012 WL 3913094 at *5 (N.D.Ohio Aug.17, 2012) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir.1993)).

Here, ALJ Randazzo determined that there had been no change in Plaintiff's condition since his previous application and, therefore, adopted the 2009 RFC

10

determination of ALJ Hanekamp.  Plaintiff argues that ALJ Randazzo should have deviated from ALJ Hanekamp's decision based on medical evidence showing new or worsening impairments.  As the Commissioner correctly explains, however, Plaintiff has failed to provide sufficient evidence to meet his burden of proving that his condition has worsened.  The only evidence Plaintiff presents are records showing his participation in physical therapy following his second motor vehicle accident in July 2011, and treatment records from 2011 documenting cervical radiculopathy and neck pain.  When Plaintiff was discharged from physical therapy in October 2011, however, his physical therapist offered a "good" prognosis, noting that no further skilled care was necessary.  (Tr. 556-557.)  This suggests that Plaintiff's condition, while it may have temporarily worsened following his second car accident, improved with physical therapy.

Furthermore, contrary to Plaintiff's assertion that Dr. Schwartz's October 2011 impression of cervical radiculopathy was "a new condition not previously considered," (Plaintiff's Brief (Pl.'s Br. at PageID #'s 709-710), the record contains documentation of cervical radiculopathy and pain by Dr. Schwartz as early as 2008 (Tr. 309).  In fact, in his October 2009 hearing decision, ALJ Hanekamp considered and specifically discussed EMG results of radiculopathy as well as Dr. Schwartz's March 2008 medical source statement documenting cervical radiculopathy and pain.  (Tr. 93.)  ALJ Hanekamp also discussed reports from Teresa Ruch, M.D., documenting neck pain, left arm pain, and back pain.  (*Id.*)  Thus, the record shows Plaintiff had neck pain and cervical radiculopathy prior to 2009, and that ALJ Hanekamp considered this evidence in determining Plaintiff's RFC.  Although Plaintiff notes that he was involved in a car accident after ALJ Hanekamp rendered his decision, Plaintiff has failed to show that this accident caused his previously-

11

documented neck pain and cervical radiculopathy to worsen and thus require ALJ Randazzo to deviate from ALJ Hanekamp's RFC.

Plaintiff further argues that in finding that his condition had not changed, ALJ Randazzo improperly rejected Dr. Schwartz's March 2008 opinion of Plaintiff's physical limitations. (Tr. 309.) This argument has no merit. First, Dr. Schwartz's opinion was rendered more than a year before Plaintiff's alleged disability onset date and more than a year before ALJ Hanekamp determined that Plaintiff was not disabled. Thus, it is unreasonable to say that the opinion shows that Plaintiff's condition worsened since October 16, 2009, as it was rendered long before that date. Second, ALJ Hanekamp thoroughly considered and rejected the opinion in his hearing decision, noting that Dr. Schwartz's opinion was not supported by Dr. Schwartz's treatment notes or any other medical evidence in the record. (Tr. 94.) Third, ALJ Randazzo did not ignore the opinion altogether even though it was not rendered during the relevant period; he indicated that he did consider the opinion, but found it to be unsupported. (Tr. 18.) For those reasons, Plaintiff has failed to show how Dr. Schwartz's March 2008 opinion–previously rejected by ALJ Hanekamp and again by ALJ Randazzo–demonstrates a worsening of his condition.

Plaintiff also takes issue with what he believes were the ALJ's reasons for finding that Plaintiff's condition has not changed[1], arguing that the ALJ's reasons are inadequate. The standard for reviewing a subsequent ALJ's decision remains substantial evidence. *Id.*

---

[1] Plaintiff notes that "[i]t appears, though it is not entirely clear," that the ALJ's basis for finding that Plaintiff's condition has not changed is that Plaintiff rejected surgery and treated with physical therapy, and that an examination from August 5, 2011, showed that Plaintiff was neurologically normal. (Pl.'s Br. at PageID #709.)

12

at 843 (applying the substantial evidence standard to the ALJ's conclusion that the claimant's condition had improved). Here, the period under consideration begins on October 17, 2009, Plaintiff's alleged disability onset date. ALJ Randazzo's opinion that Plaintiff's condition has not changed is supported by the following substantial evidence:

- Plaintiff had a herniated disc at C6-7 and cervical radiculopathy; however, he was treated with physical therapy and rejected surgery. (Tr. 18.)

- Plaintiff was in a motor vehicle accident in July 2011. (Tr. 18.) An examination on August 5, 2011, showed that he was neurologically normal. (*Id.*)

- Plaintiff testified that he suffered from migraine headaches, but an MRI of his head was normal and the headaches responded to medications. (Tr. 18.)

- Plaintiff's neurological findings were normal during the relevant period and his treatment was routine and conservative in nature. (Tr. 18, 498, 555-614, 637-639.)

- With regard to Plaintiff's mental state, evidence showed that Plaintiff was "alert, cooperative, friendly, well groomed, coherent, logical, organized, with sustained concentration and a good memory" on examination. (Tr. 19.)

Accordingly, Plaintiff's argument on this point lacks merit.

## 2. The ALJ Erred in Relying on VE Testimony.

Plaintiff argues that the ALJ erred in relying on the VE's testimony to conclude that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. According to Plaintiff, the VE's testimony conflicts with the DOT in the following ways:

- The industrial cleaner and stock handler positions require *frequent* stooping, crouching, and reaching, while the ALJ's hypothetical to the VE limited reaching, stooping, and crouching to *occasionally*.

13

- The industrial cleaner position has a reading requirement of 2,500 words at a rate of 95-120 words per minute, while the ALJ's hypothetical to the VE limited the hypothetical individual to oral instructions with no tasks requiring reading except for simple words or occasional short and simple notes. Additionally, the stock handler position requires recognizing the meaning of 2,500 (two- or three-syllable) words and a reading rate of 95-120 words per minute.

Plaintiff maintains that the ALJ was required to resolve the aforementioned conflicts between the VE's testimony and the DOT before relying on the VE's testimony to support his determination that Plaintiff was not disabled. For the following reasons, Plaintiff's argument is without merit.

As an initial matter, contrary to Plaintiff's assertions, the only potential conflict between the VE's testimony and the DOT appears to be with regard to the amount of stooping and crouching required by the jobs the VE identified. While the ALJ limited Plaintiff to occasional stooping and crouching, the industrial cleaner and stock handler positions require frequent stooping and crouching. As to reaching, however, there appears to be no conflict between the VE's testimony and the DOT, as the ALJ assigned Plaintiff no limitations with regard to overhead reaching with his dominant right arm. (Tr. 17.) Furthermore, the ALJ's RFC determination does not impose any specific restrictions on the rate at which Plaintiff can read, nor does it preclude Plaintiff from performing jobs in which reading is required. (*Id.*)

Social Security Ruling 00-4P requires the ALJ to ask the VE whether his or her testimony is consistent with the DOT and obtain a reasonable explanation for any conflicts between occupational evidence provided by the VE and information in the DOT if the ALJ will be relying on the VE's testimony. SSR 00-4P (S.S.A. Dec. 4, 2000). The ALJ is under

no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by Social Security Regulation 00-4p, however, because that obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). "The fact that plaintiff's counsel did not do so is not grounds for relief." *Id.*; *see also Donahue v. Barnhart*, 446 F.3d 441, 446 (7th Cir. 2002) ("The ruling requires an explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late."). *But see Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (explaining that apparent conflicts include those that were so obvious during the VE's testimony that the ALJ should have noticed them and elicited reasonable explanations).

Here, the ALJ questioned the VE about her qualifications and the basis for her testimony (tr. 65-66), gave Plaintiff the opportunity to cross examine the VE and address any conflicts with the DOT (tr. 75-78), and ultimately concluded that the VE's testimony was consistent with the DOT (tr. 20). Although Plaintiff's counsel had ample opportunity to do so, she did not question the VE about the stooping, crouching, reaching, and reading requirements of the jobs the VE identified. Thus, the ALJ had no reason to believe that, according to the DOT, the jobs the VE named require frequent, rather than occasional, stooping and crouching. Because Plaintiff's counsel did not raise any discrepancy between the VE's testimony and the DOT at the hearing, Plaintiff cannot now argue that the ALJ erred by relying on the VE testimony to find that Plaintiff can perform a significant number of jobs that exist in the national economy.

Finally, as the Commissioner notes in her Brief, Plaintiff has not shown an actual conflict between the VE's testimony and the DOT merely by pointing to information in the DOT that is contrary to the VE's testimony.  "[T]he DOT contains information about most, but not all, occupations.  Moreover . . . the DOT's job classifications are collective descriptions of 'occupations' that can encompass numerous jobs. . . .  The fact, therefore, that a VE and the DOT might use different terminology to describe employment positions does not establish that a conflict exists between these sources of evidence." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quotations and citations omitted).  The VE's testimony did not have to coincide perfectly with the information in the DOT, as the DOT provides only "composite descriptions of occupations as they may typically occur," and, therefore, "may not coincide with a specific job as actually performed in a particular establishment or any given industry."  *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994).  The VE stated that her testimony would be based not only on the DOT, but on her knowledge, education, training, and experience as well.  (Tr. 66.)   The ALJ had the duty of assessing the credibility of the VE, and reasonably concluded that her testimony was credible.  See *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480-481 (6th Cir. 1988) ("It is the Secretary's job to evaluate the trustworthiness of a vocational expert's testimony.")  Accordingly, the ALJ did not err in relying on the testimony of the VE.  Plaintiff's second assignment of error does not present a basis for remand of her case.

## VI.  CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

*s/ Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: January 29, 2015

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).